## ROELL ET AL. *v.* WITHROW

No. 02–69. Argued February 26, 2003—Decided April 29, 2003

581

SOUTER, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, GINSBURG, and BREYER, JJ., joined. THOMAS, J., filed a dissenting opinion, in which STEVENS, SCALIA, and KENNEDY, JJ., joined, *post*, p. 591.

*Lisa R. Eskow*, Deputy Solicitor General of Texas, argued the cause for petitioners. With her on the briefs were *Greg Abbott*, Attorney General, *Philip A. Lionberger*, former Solicitor General, *R. Ted Cruz*, Solicitor General, *Melanie P. Sarwal*, Assistant Solicitor General, and *Charles K. Eldred*, Assistant Attorney General.

*Amanda Frost* argued the cause for respondent. With her on the brief was *Brian Wolfman*.

JUSTICE SOUTER delivered the opinion of the Court.

The Federal Magistrate Act of 1979 (Federal Magistrate Act or Act) expanded the power of magistrate judges by authorizing them to conduct "any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case," as long as they are "specially designated . . . by the district court" and are acting "[u]pon the consent of the parties." 28 U. S. C. § 636(c)(1). The question is whether consent can be inferred from a party's conduct during litigation, and we hold that it can be.

## I

Respondent Jon Michael Withrow is a Texas state prisoner who brought an action under Rev. Stat. § 1979, 42 U. S. C. § 1983, against members of the prison's medical staff, petitioners Joseph Roell, Petra Garibay, and James Reagan, alleging that they had deliberately disregarded his medical needs in violation of the Eighth Amendment. See *Estelle* v. *Gamble*, 429 U. S. 97 (1976). During a preliminary hearing before a Magistrate Judge to determine whether the suit could proceed *in forma pauperis*, see 28 U. S. C. § 1915, the Magistrate Judge told Withrow that he could choose to have

her rather than the District Judge preside over the entire case. App. 10–11. Withrow agreed orally, *id.*, at 11, and later in writing, App. to Pet. for Cert. 20a. A lawyer from the Texas attorney general's office who attended the hearing, but was not permanently assigned to Withrow's case, indicated that she would have to "talk to the attorneys who have been assigned the case to see if [the petitioners] will execute consent forms." App. 11.

Without waiting for the petitioners' decision, the District Judge referred the case to the Magistrate Judge for final disposition, but with the caveat that "all defendants [would] be given an opportunity to consent to the jurisdiction of the magistrate judge," and that the referral order would be vacated if any of the defendants did not consent. App. to Pet. for Cert. 21a. The Clerk of Court sent the referral order to the petitioners along with a summons directing them to include "[i]n their answer or in a separate pleading . . . a statement that 'All defendants consent to the jurisdiction of a United States Magistrate Judge' or 'All defendants do not consent to the jurisdiction of a United States Magistrate Judge.'" App. 13. The summons advised them that "[t]he court shall not be told which parties do not consent." *Ibid.* Only Reagan, who was represented by private counsel, gave written consent to the referral; Roell and Garibay, who were represented by an assistant in the attorney general's office, filed answers but said nothing about the referral. App. to Pet. for Cert. 17a.

The case nevertheless proceeded in front of the Magistrate Judge, all the way to a jury verdict and judgment for the petitioners. When Withrow appealed, the Court of Appeals *sua sponte* remanded the case to the District Court to "determine whether the parties consented to proceed before the magistrate judge and, if so, whether the consents were oral or written." *Id.*, at 13a. It was only then that Roell and Garibay filed a formal letter of consent with the District

Court, stating that "they consented to all proceedings before this date before the United States Magistrate Judge, including disposition of their motion for summary judgment and trial." *Id.*, at 22a.

The District Court nonetheless referred the Court of Appeals's enquiry to the same Magistrate Judge who had conducted the trial, who reported that "by their actions [Roell and Garibay] clearly implied their consent to the jurisdiction of a magistrate." *Id.*, at 19a. She was surely correct, for the record shows that Roell and Garibay voluntarily participated in the entire course of proceedings before the Magistrate Judge, and voiced no objection when, at several points, the Magistrate Judge made it clear that she believed they had consented.[1] The Magistrate Judge observed, however, that under the Circuit's precedent "consent cannot be implied by the conduct of the parties," *id.*, at 18a, and she accordingly concluded that the failure of Roell and Garibay to give express consent before sending their postjudgment letter to the District Court meant that she had lacked jurisdiction to hear the case, *ibid.* The District Court adopted the report and recommendation over the petitioners' objection. *Id.*, at 14a–15a.

The Court of Appeals affirmed the District Court, agreeing that "[w]hen, pursuant to § 636(c)(1), the magistrate judge

---

[1] On at least three different occasions, counsel for Roell and Garibay was present and stood silent when the Magistrate Judge stated that they had consented to her authority. First, in a status teleconference involving the addition of a new defendant, Danny Knutson, who later settled with Withrow and was dropped from the suit, the Magistrate Judge stated that "all of the other parties have consented to my jurisdiction." App. 18. Petitioners later filed a motion for summary judgment, which the Magistrate Judge denied, noting in her order that "this case was referred to the undersigned to conduct all further proceedings, including entry of final judgment, in accordance with 28 U. S. C. § 636(c)(1)." App. to Pet. for Cert. 26a. And finally, during jury selection, the Magistrate Judge told the panel that both sides had consented to her jurisdiction to hear the case. *Id.*, at 27a.

enters [a] final judgment, lack of consent and defects in the order of reference are jurisdictional errors" that cannot be waived. 288 F. 3d 199, 201 (CA5 2002). It also reaffirmed its prior holding that "§ 636(c) consent must be express; it cannot be implied by the parties' conduct." *Ibid.* Finally, the appellate court decided that petitioners' postjudgment consent did not satisfy § 636(c)(1)'s consent requirement. *Id.,* at 203. We granted certiorari, 537 U. S. 999 (2002), and now reverse.

## II

The Federal Magistrate Act provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court." 28 U. S. C. § 636(c)(1). Unlike nonconsensual referrals of pretrial but case-dispositive matters under § 636(b)(1), which leave the district court free to do as it sees fit with the magistrate judge's recommendations, a § 636(c)(1) referral gives the magistrate judge full authority over dispositive motions, conduct of trial, and entry of final judgment, all without district court review. A judgment entered by "a magistrate judge designated to exercise civil jurisdiction under [§ 636(c)(1)]" is to be treated as a final judgment of the district court, appealable "in the same manner as an appeal from any other judgment of a district court." § 636(c)(3).[2]

---

[2] Prior to the 1996 amendments to the Act, see Federal Courts Improvement Act of 1996, Pub. L. 104–317, § 207(1)(B), 110 Stat. 3850, parties could also elect to appeal to "a judge of the district court in the same manner as on an appeal from a judgment of the district court to a court of appeals." 28 U. S. C. § 636(c)(4) (1994 ed.) (repealed 1996). If the latter course was pursued, the court of appeals could grant leave to appeal the district court's judgment. § 636(c)(5) (same). In all events, whether the initial appeal was to the court of appeals under § 636(c)(3) or to the district court under § 636(c)(4), the parties retained the right to seek ultimate review from this Court. § 636(c)(5) (same).

Section 636(c)(2) establishes the procedures for a § 636(c)(1) referral. "If a magistrate judge is designated to exercise civil jurisdiction under [§ 636(c)(1)], the clerk of court shall, at the time the action is filed, notify the parties of the availability of a magistrate judge to exercise such jurisdiction." § 636(c)(2). Within the time required by local rule, "[t]he decision of the parties shall be communicated to the clerk of court." *Ibid.* Federal Rule of Civil Procedure 73(b) specifies that the parties' election of a magistrate judge shall be memorialized in "a joint form of consent or separate forms of consent setting forth such election," see Fed. Rules Civ. Proc. Form 34, and that neither the magistrate nor the district judge "shall . . . be informed of a party's response to the clerk's notification, unless all parties have consented to the referral of the matter to a magistrate judge." The procedure created by 28 U. S. C. § 636(c)(2) and Rule 73(b) thus envisions advance, written consent communicated to the clerk, the point being to preserve the confidentiality of a party's choice, in the interest of protecting an objecting party against any possible prejudice at the magistrate judge's hands later on. See also § 636(c)(2) ("Rules of court for the reference of civil matters to magistrate judges shall include procedures to protect the voluntariness of the parties' consent").

Here, of course, § 636(c)(2) was honored in the breach, by a referral before Roell and Garibay gave their express consent, without any statement from them, written or oral, until after judgment. App. to Pet. for Cert. 19a. Nonetheless, Roell and Garibay "clearly implied their consent" by their decision to appear before the Magistrate Judge, without expressing any reservation, after being notified of their right to refuse and after being told that she intended to exercise case-dispositive authority. *Ibid.*[3] The only question is whether

[3] See Black's Law Dictionary 95 (7th ed. 1999) ("'The term "appearance" . . . designate[s] the overt act by which [a party] submits himself to the court's jurisdiction . . . . An appearance may be expressly made by formal

consent so shown can count as conferring "civil jurisdiction" under § 636(c)(1), or whether adherence to the letter of § 636(c)(2) is an absolute demand.

So far as it concerns full-time magistrate judges,[4] the font of a magistrate judge's authority, § 636(c)(1), speaks only of "the consent of the parties," without qualification as to form, and § 636(c)(3) similarly provides that "[t]he consent of the parties allows" a full-time magistrate judge to enter a final, appealable judgment of the district court. These unadorned references to "consent of the parties" contrast with the language in § 636(c)(1) covering referral to certain part-time magistrate judges, which requires not only that the parties consent, but that they do so by "specific written request." Cf. also 18 U. S. C. § 3401(b) (allowing magistrate judges to preside over misdemeanor trials only if the defendant "expressly consents . . . in writing or orally on the record"). A distinction is thus being made between consent simple, and consent expressed in a "specific written request." And although the specific referral procedures in 28 U. S. C. § 636(c)(2) and Federal Rule of Civil Procedure 73(b) are by no means just advisory, the text and structure of the section as a whole suggest that a defect in the referral to a full-time magistrate judge under § 636(c)(2) does not eliminate that magistrate judge's "civil jurisdiction" under § 636(c)(1) so long as the parties have in fact voluntarily consented. See *King* v. *Ionization Int'l, Inc.*, 825 F. 2d 1180, 1185 (CA7 1987) (noting that the Act "does not require a specific form . . . of consent").[5]

---

written or oral declaration, or record entry, or it may be implied from some act done with the intention of appearing and submitting to the court's jurisdiction'" (quoting 4 Am. Jur. 2d, Appearance § 1, p. 620 (1995))).

[4] The parties do not dispute that the Magistrate Judge who presided over the trial was a full-time Magistrate Judge.

[5] The textual evidence cited by the dissent is far from conclusive. The dissent focuses on the fact that § 636(c)(1) allows a magistrate judge to exercise authority only "[u]pon" the parties' consent, and it concludes that this temporal connotation forecloses accepting implied consent. But the

These textual clues are complemented by a good pragmatic reason to think that Congress intended to permit implied consent. In giving magistrate judges case-dispositive civil authority, Congress hoped to relieve the district courts' "mounting queue of civil cases" and thereby "improve access to the courts for all groups." S. Rep. No. 96–74, p. 4 (1979); see H. R. Rep. No. 96–287, p. 2 (1979) (The Act's main object was to create "a supplementary judicial power designed to meet the ebb and flow of the demands made on the Federal judiciary"). At the same time, though, Congress meant to preserve a litigant's right to insist on trial before an Article III district judge insulated from interference with his obligation to ignore everything but the merits of a case. See *Commodity Futures Trading Comm'n* v. *Schor,* 478 U. S. 833, 848 (1986) (Article III protects litigants' " 'right to have claims decided before judges who are free from potential

---

timing of consent is a different matter from the manner of its expression, and it is perfectly in keeping with the sequence of events envisioned by § 636(c)(1) to infer consent from a litigant's initial act of appearing before the magistrate judge and submitting to her jurisdiction, instead of insisting on trial before a district judge. An "appearance" being commonly understood as "[t]he first act of the defendant in court," J. Ballentine, Law Dictionary with Pronunciations 91 (2d ed. 1948), any subsequent proceedings by the court will occur "[u]pon the consent of the parties," § 636(c)(1).

Furthermore, it is hardly true, contrary to the dissent's claim, *post,* at 594 (opinion of THOMAS, J.), that § 636(c)(2) and Rule 73(b) are pointless if implied consent is permitted under § 636(c)(1). Certainly, notification of the right to refuse the magistrate judge is a prerequisite to any inference of consent, so that aspect of § 636(c)(2)'s protection is preserved. And litigants may undoubtedly insist that they be able to communicate their decision on the referral to the clerk, in order to guard against the risk of reprisals at the hands of either judge. The only question is whether a litigant who forgoes that procedural opportunity, but still voluntarily gives his consent through a general appearance before the magistrate judge, is still subject to the magistrate judge's "civil jurisdiction," and we think that the language of § 636(c)(1) indicates that he is.

domination by other branches of government'" (quoting *United States* v. *Will*, 449 U. S. 200, 218 (1980))). It was thus concern about the possibility of coercive referrals that prompted Congress to make it clear that "the voluntary consent of the parties is required before a civil action may be referred to a magistrate for a final decision." S. Conf. Rep. No. 96–322, p. 7 (1979); see also S. Rep. No. 96–74, at 5 ("The bill clearly requires the voluntary consent of the parties as a prerequisite to a magistrate's exercise of the new jurisdiction. The committee firmly believes that no pressure, tacit or expressed, should be applied to the litigants to induce them to consent to trial before the magistrates"); H. R. Rep. No. 96–287, at 2 (The Act "creates a vehicle by which litigants can consent, freely and voluntarily, to a less formal, more rapid, and less expensive means of resolving their civil controversies").[6]

When, as here, a party has signaled consent to the magistrate judge's authority through actions rather than words, the question is what outcome does better by the mix of congressional objectives. On the one hand, the virtue of strict insistence on the express consent requirement embodied in § 636(c)(2) is simply the value of any bright line: here, absolutely minimal risk of compromising the right to an Article

---

[6] Originally, the third sentence of § 636(c)(2) provided that once the decision of the parties was communicated to the clerk, "neither the district judge nor the magistrate shall attempt to persuade or induce any party to consent to reference of any civil matter to a magistrate." 93 Stat. 643. In the 1990 amendments to the Act, Congress amended § 636(c)(2) to provide that even after the parties' decision is made, "either the district court judge or the magistrate may again advise the parties of the availability of the magistrate, but in so doing, shall also advise the parties that they are free to withhold consent without adverse substantive consequences." Judicial Improvements Act of 1990, Pub. L. 101–650, § 308, 104 Stat. 5112. The change reflected Congress's diminishing concern that communication between the judge and the parties would lead to coercive referrals. See H. R. Rep. No. 101–734, p. 27 (1990).

III judge. But there is another risk, and insisting on a bright line would raise it: the risk of a full and complicated trial wasted at the option of an undeserving and possibly opportunistic litigant. This risk is right in front of us in this case. Withrow consented orally and in writing to the Magistrate Judge's authority following notice of his right to elect trial by an Article III district judge; he received the protection intended by the statute, and deserves no boon from the other side's failure to cross the bright line. In fact, there is even more to Withrow's unworthiness, since under the local rules of the District Court, it was Withrow's unmet responsibility as plaintiff to get the consent of all parties and file the completed consent form with the clerk. See Gen. Order No. 80–5, Art. III(B)(2) (SD Tex., June 16, 1980), p. 5, App. to Brief in Opposition 7a. In another case, of course, the shoe might be on the other foot; insisting on the bright line would allow parties in Roell's and Garibay's position to sit back without a word about their failure to file the form, with a right to vacate any judgment that turned out not to their liking.

The bright line is not worth the downside. We think the better rule is to accept implied consent where, as here, the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge. Inferring consent in these circumstances thus checks the risk of gamesmanship by depriving parties of the luxury of waiting for the outcome before denying the magistrate judge's authority. Judicial efficiency is served; the Article III right is substantially honored. See *Schor, supra,* at 849–850 (finding that the litigant "effective[ly] waive[d]" his right to an Article III court by deciding "to seek relief before the [Commodity Futures Trading Commission] rather than in the federal courts"); *United States* v. *Raddatz,* 447 U. S. 667, 676, n. 3 (1980) (eschewing a construction of the Act that would tend to "frus-

trate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts").[7]

## III

Roell's and Garibay's general appearances before the Magistrate Judge, after they had been told of their right to be tried by a district judge, supply the consent necessary for the Magistrate Judge's "civil jurisdiction" under § 636(c)(1).[8] We reverse the judgment of the Court of Appeals and remand the case for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE THOMAS, with whom JUSTICE STEVENS, JUSTICE SCALIA, and JUSTICE KENNEDY join, dissenting.

The provision that this Court must interpret reads: "Upon the consent of the parties, a . . . magistrate judge . . . may

---

[7] We doubt that this interpretation runs a serious risk of "spawn[ing] a second litigation of significant dimension." *Buckhannon Board & Care Home, Inc.* v. *West Virginia Dept. of Health and Human Resources,* 532 U. S. 598, 609 (2001) (internal quotation marks omitted). In the first place, implied consent will be the exception, not the rule, since, as we discuss above, district courts remain bound by the procedural requirements of § 636(c)(2) and Federal Rule of Civil Procedure 73(b). See *supra,* at 586, 587–588, n. 5. The dissent surmises, *post,* at 596, that our position raises "ambiguities" as to whether an inference of consent will be supported in a particular case, but we think this concern is greatly exaggerated: as long as parties are notified of the availability of a district judge as required by § 636(c)(2) and Rule 73(b), a litigant's general appearance before the magistrate judge will usually indicate the necessary consent. In all events, whatever risk of "second[ary] litigation" may exist under an implied consent rule pales in comparison to the inefficiency and unfairness of requiring relitigation of the entire case in circumstances like these.

[8] Because we conclude that Roell and Garibay impliedly consented to the Magistrate Judge's authority, we need not address whether express postjudgment consent would be sufficient in a case where there was no prior consent, either express or implied. We also have no opportunity to decide whether the Court of Appeals was correct that lack of consent is a "jurisdictional defect" that can be raised for the first time on appeal.

conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment." 28 U. S. C. § 636(c)(1). The majority holds that no express consent need be given prior to the commencement of proceedings before the magistrate judge. Rather, consent can be implied "where . . . the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge." *Ante*, at 590. In my view, this interpretation of § 636(c)(1) is contrary to its text, fails to respect the statutory scheme, and raises serious constitutional concerns. Furthermore, I believe that a lack of proper consent is a jurisdictional defect and, therefore, a court of appeals reviewing a judgment entered by a magistrate judge pursuant to § 636(c) may inquire *sua sponte* into the consent's validity.

## I

## A

There are two prongs to the majority's holding: (1) parties can give their consent *during* the actual proceedings conducted by a magistrate judge, and (2) such consent need not be explicit, but rather may be inferred from the parties' conduct. Neither of these conclusions is correct.

As already noted, a magistrate judge may carry out certain functions of a district court only "[u]pon the consent of the parties." Congress' use of the word "upon" suggests that the necessary consent must precede the magistrate judge's exercise of his authority. "Upon" is defined as "immediately or very soon after." The Random House Dictionary of the English Language 1570 (1966). Thus, under the plain language of the statute, consent is a precondition to the magistrate judge's exercise of case-dispositive power; without it, a magistrate judge cannot preside over a trial or enter judgment. *Pacemaker Diagnostic Clinic of Am., Inc.* v. *Instromedix, Inc.*, 725 F. 2d 537, 540 (CA9 1984) (en banc) (Kennedy, J.).

The word "upon" is used to mean "thereafter" in other parts of the statute as well. For example, § 636(h) provides that a "magistrate judge who has retired may, *upon* the consent of the chief judge of the district involved, be recalled to serve as a magistrate judge . . . ." (Emphasis added.) Clearly, a retired magistrate judge cannot return to his former post before the chief judge consents. Similarly, § 636(e)(3) uses the word "upon" to mean "subsequent to." That subsection grants magistrate judges the power to hold parties before them in contempt, but conditions the imposition of contempt sanctions "*upon* notice and hearing under the Federal Rules of Criminal Procedure." (Emphasis added.) That is, a party cannot be held in contempt without *first* being given notice and a hearing. Because under the normal rules of statutory construction the Court "assumes that identical words used in different parts of the same act are intended to have the same meaning," *Sorenson* v. *Secretary of Treasury*, 475 U. S. 851, 860 (1986) (citations and internal quotation marks omitted), the word "upon" in § 636(c)(1) must mean "thereafter," just as it does in §§ 636(h) and (e)(3). By allowing consent to be "inferred from a party's conduct *during* litigation," *ante*, at 582 (emphasis added), the majority disregards the clear meaning of the word "upon."

Similarly, the conclusion that implied, rather than express, consent suffices is not borne out by either § 636(c)(1) itself or the statutory scheme as a whole. The majority is, of course, correct that the relevant clause of § 636(c)(1) speaks only of "consent," while the clause addressing part-time magistrate judges requires that consent be communicated by a "specific written request." *Ante*, at 587 (internal quotation marks omitted). But this premise does not command the conclusion the majority draws. Both clauses require *express* consent, with the latter mandating a *specific form* of express consent—a written request.

This reading is most consistent with the statutory scheme. Despite the majority's concession that § 636(c)(2) and Federal Rule of Civil Procedure 73 "are by no means just advisory," *ante*, at 587, the majority fails to give them any weight. Section 636(c)(2) requires the clerk of the district court to notify the parties of the availability of a magistrate "at the time the action is filed," *after* which the "decision of the parties [whether to consent] shall be communicated to the clerk of court." The fact that the parties' decision must be communicated to the clerk soon after the filing of the action indicates that the consent envisioned by the statute must be given affirmatively and expressly. Indeed, a party would find it quite difficult to "communicat[e]" the necessary consent to the *clerk of the court* through actions undertaken *"during litigation,"* *ante*, at 582 (emphasis added). The majority's view suggests that the clerk of the court must monitor the parties' behavior in the magistrate judge's courtroom and determine, at some point not specified by the majority, that the parties' actions have ripened into consent. That is not a reasonable interpretation. Accordingly, I would hold that appearance before a magistrate judge without objection cannot be deemed "consent" within the meaning of this statutory scheme.

Federal Rule of Civil Procedure 73 fortifies this reading. The Rule mirrors the provisions of § 636(c)(2) for informing parties of their option to proceed before a magistrate judge and of their obligation to file a consent form if they chose to do so. Fed. Rule Civ. Proc. 73(b) ("When a magistrate judge has been designated to exercise civil trial jurisdiction, the clerk shall give written notice to the parties of their opportunity to consent," and if the parties agree, "they *shall execute and file a joint form of consent* or separate forms of consent . . ." (emphasis added)).

Read together, the foregoing provisions indicate that parties must *expressly* communicate their consent to the magistrate judge's exercise of jurisdiction over their case and must

do so *before* litigation—or at the very least *before* a magistrate judge enters a binding judgment.

## B

While I agree with the majority's view that § 636(c)(1) was "meant to preserve a litigant's right to insist on trial before an Article III district judge," *ante*, at 588, and to prevent "coercive referrals," *ante*, at 589, the majority's construction of this provision does not follow the Court's "settled policy to avoid an interpretation of a federal statute that engenders constitutional issues." *Gomez* v. *United States*, 490 U. S. 858, 864 (1989).

"A critical limitation on [the] expanded jurisdiction [of magistrate judges] is consent." *Id.*, at 870. Reading § 636(c)(1) to require express consent not only is more consistent with the text of the statute, but also ensures that the parties knowingly and voluntarily waive their right to an Article III judge. A party's express consent is a clear and unambiguous indication that the party had sufficient notice it was freely waiving its right. Accordingly, I would choose this interpretation over the majority's view that implied consent suffices to give a magistrate judge dispositive authority over a case. Cf. *Aetna Ins. Co.* v. *Kennedy ex rel. Bogash*, 301 U. S. 389, 393 (1937) (holding that the parties, by their request for directed verdicts, did not waive their right to trial by jury, and observing that "courts indulge every reasonable presumption against waiver"); *Ohio Bell Telephone Co.* v. *Public Util. Comm'n of Ohio*, 301 U. S. 292, 307 (1937) (holding that a telephone company did not waive its right to have the value of its property determined upon evidence presented in open proceedings by not opposing consolidation of two proceedings, and noting that "[w]e do not presume acquiescence in the loss of fundamental rights").

Moreover, the majority's test for determining whether a party has given adequate implied consent—"where . . . the litigant or counsel was made aware of the need for consent

and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge," *ante,* at 590— is rife with ambiguities. How are the courts to determine whether the litigant *or* counsel "was made aware of the need to consent and the right to refuse it"? Are courts required to search beyond the record and inquire into whether a clerk of the court informed either a litigant or his counsel of the litigant's rights and provided them with requisite forms to sign? Can courts rely, if applicable, on the parties' participation in other unrelated proceedings before a magistrate judge? In addition, the majority's view of what constitutes "voluntariness" in this context is not at all clear as it seems to depend, at least in part, on establishing a litigant's or counsel's awareness of the litigant's rights.

Although the majority brushes aside the prudential implications of its reading, *ante,* at 591, n. 7 ("We doubt that this interpretation runs a serious risk of 'spawn[ing] a second litigation of significant dimension.' *Buckhannon Board & Care Home, Inc.* v. *West Virginia Dept. of Health and Human Resources,* 532 U. S. 598, 609 (2001)"), it is hardly a novel proposition that a bright-line rule would be easier to administer. And, it would certainly be so in adjudicating the validity of consent under this statute. If express consent is required, courts will not have to study the record of a proceeding on a case-by-case basis, searching for patterns in the parties' behavior that would provide sufficient indicia of voluntariness to satisfy this newly minted, but vague, test for consent. A bright-line rule brings clarity and predictability, and, in light of the constitutional implications of this case, these values should not be discounted.

Given the uncertainties surrounding the determination of the validity of implied consent, it is not surprising that the majority does not even claim that the requirements of Article III have been satisfied in this case. Rather, all the majority can muster is that "the Article III right is *substantially* honored." *Ante,* at 590 (emphasis added). However,

litigants' rights under Article III are either protected or they are not. As the majority suggests, its reading does not safeguard these rights. Indeed, the only protection offered by the majority is its hope that the "procedural requirements of § 636(c)(2) and Federal Rule of Civil Procedure 73(b)" will be complied with. *Ante,* at 591, n. 7. The majority offers no credible solution for circumstances, such as the ones here, where these rules were not followed.

Even apart from the plain text of the statute and the canon of constitutional avoidance, concerns about fairness—to which the majority alludes above, see *ante,* at 588–590— weigh in favor of express consent. According to the majority, the respondent is a "possibly opportunistic litigant," who "deserves no boon from the other side's failure to cross the bright line," *ante,* at 590. The record, however, provides no evidence that respondent, proceeding *pro se* below, manipulated the system. Moreover, "the other side" is the State of Texas, a repeat player, represented by its own counsel, and no doubt familiar with the rules of the local federal courts. Finally, it was not respondent who raised the issue of consent, but the Court of Appeals, which considered the question *sua sponte.*

## II

Because the parties here did not expressly consent to the proceeding before the Magistrate Judge, I next consider whether the lack of such consent destroys jurisdiction of a court of appeals reviewing a magistrate judge's judgment. I believe it does, and thus, a court of appeals may—and indeed must—raise it *sua sponte.*

A court of appeals exercises jurisdiction over a magistrate judge's final order pursuant to § 636(c)(3), which provides:

"Upon entry of judgment in any case referred under paragraph (1) of this subsection, an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate judge in

the same manner as an appeal from any other judgment of a district court. *The consent of the parties allows a magistrate judge designated to exercise civil jurisdiction under paragraph (1) of this subsection to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.*" (Emphasis added.)

Under § 636(c)(3), appellate jurisdiction over final judgments entered by a magistrate judge depends on whether the requirements of § 636(c)(1), including consent, are satisfied. Absence of consent means absence of a "judgment," which, in turn, means absence of appellate jurisdiction. Thus, under § 636, the necessary precondition for a court of appeals' jurisdiction over a magistrate judge's order is the parties' consent to proceed before the magistrate judge. Because valid consent is a jurisdictional prerequisite for appellate jurisdiction, and, hence, an integral part of the inquiry into the existence of such jurisdiction, § 636(c)(3) permits a court of appeals to examine the validity of the consent to the magistrate judge's authority *sua sponte.*

The *de facto* officer doctrine is not to the contrary. That doctrine "prevent[s] litigants from abiding the outcome of a lawsuit and then overturning it if adverse upon a technicality of which they were previously aware." *Glidden Co.* v. *Zdanok,* 370 U. S. 530, 535 (1962) (plurality opinion). Examples of such "technicalities" are defects in the judge's appointment or designation. See, *e. g., Ex parte Ward,* 173 U. S. 452, 456 (1899) (judge improperly appointed during a Senate recess); *Wright* v. *United States,* 158 U. S. 232, 238 (1895) (deputy marshal whose oath of office had not been properly administered); *McDowell* v. *United States,* 159 U. S. 596, 601–602 (1895) (judge whose designation to sit in a different district may have been improper under the statute); *Ball* v. *United States,* 140 U. S. 118, 128–129 (1891) (judge sitting in place of a deceased judge where designation permitted only the substitution for a disabled judge). The doctrine is, how-

ever, inapplicable "when the alleged defect of authority operates also as a limitation on this Court's appellate jurisdiction. *Ayrshire Collieries Corp.* v. *United States,* 331 U. S. 132 (three-judge court); *United States* v. *Emholt,* 105 U. S. 414 (certificate of divided opinion)." *Glidden,* 370 U. S., at 535 (plurality opinion). Additionally, "when the statute claimed to restrict authority is not merely technical but embodies a strong policy concerning the proper administration of judicial business, this Court has treated the alleged defect as 'jurisdictional' and agreed to consider it on direct review even though not raised at the earliest practicable opportunity." *Id.,* at 535–536. This is the case here—§ 636(c) "embodies a strong policy" of ensuring that litigants waive their rights to an Article III judge knowingly and voluntarily. The requirement of consent is not a mere "technicality." Sections 636(c)(1), 636(c)(2), and 636(c)(3) reference consent explicitly and require it as a precondition for the exercise of a magistrate judge's authority and of a court of appeals' review of the magistrate judge's judgment. The foregoing indicates the importance of consent as a touchstone of this statutory scheme. Thus, absence of consent is a jurisdictional defect and a court of appeals must raise such defects *sua sponte.*

\* \* \*

I would vacate the judgment below and remand the case with instructions to dismiss the appeal for lack of subject-matter jurisdiction. I respectfully dissent.