[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 11, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-10013

_____

D. C. Docket No. 00-00696-CV-AJ

THOMAS MARTIN BISMARK,

Plaintiff-Appellant,

versus

NEIL FISHER,
CARLA CESSARIO,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 11, 2007)**

Before PRYOR and FAY, Circuit Judges, and STEELE,* District Judge.

PER CURIAM:

_____

*The Honorable William H. Steele, United States District Court for the Southern District of Alabama, sitting by designation.

Appellant, Thomas Martin Bismark, brought this action against appellee, Neil Fisher, pursuant to 42 U.S.C. § 1983, alleging that Dr. Fisher had exhibited deliberate indifference to his serious medical needs while Bismark was in the custody of the Florida Department of Corrections ("DOC"). The court below entered summary judgment in Dr. Fisher's favor, on the grounds that plaintiff's evidence was insufficient to establish a violation of his Eighth Amendment right to be free from cruel and unusual punishment. We affirm.

## I. BACKGROUND

Bismark has certain foot deformities arising from a birth defect that causes the front of his feet to rise. Unless he dons proper footwear, the tops of his feet may be rubbed raw against his shoes. This painful condition is ameliorated when Bismark wears ordinary high-top tennis shoes, of the type that are readily available in retail shoe stores.

In 1998, Bismark was incarcerated in a Florida prison and wearing DOC-issued, hard-soled boots. His feet blistered, swelled and split open. The prison sent Bismark to an outside podiatrist, who prescribed special orthopedic shoes and medically molded arch inserts, all at DOC expense. Although Bismark received the inserts, he was transferred to the Everglades Correctional Institution ("ECI")

still clad in his boots and without his special shoes, which never arrived. At ECI, prison officials prescribed Bismark Motrin for foot pain. Five days later, he was seen by Dr. Fisher, the Chief Medical Director of ECI, for continuing foot discomfort. Bismark specifically informed Dr. Fisher that the podiatrist had prescribed him special shoes. Dr. Fisher had Bismark remove his boots, looked at his feet, and instructed Bismark to walk across the room, which he did. Based on that examination, Dr. Fisher's diagnosis was that Bismark had only a minor deformity on his fifth digit, and his conclusion was that special orthopedic shoes were not medically indicated because Bismark's feet were not grossly deformed or abnormal. Dr. Fisher recommended that Bismark purchase sneakers, which were available in ECI's prison canteen, in response to which Bismark protested that he lacked the funds to do so.

Although Bismark did not receive free orthopedic shoes, Dr. Fisher and ECI made several other accommodations for him. Dr. Fisher continued him on pain medication for two weeks and instructed him to take Tylenol as needed. Subsequently, ECI medical staff (presumably acting under Dr. Fisher's direction and/or supervision) issued Bismark a "bed rest lay-in pass" and advised him to soak his feet in warm water.

Bismark filed suit against Dr. Fisher under § 1983 for deliberate indifference

to his medical needs, in violation of the Eighth Amendment. The district judge referred this case to a magistrate judge for final disposition, based on a purported stipulation by the parties. The magistrate judge granted Dr. Fisher's motion for summary judgment, and this appeal followed.

## II. DISCUSSION

*A.    Jurisdiction.*

This Court's appellate jurisdiction is generally confined to final decisions of the district courts. *See* 28 U.S.C. § 1291. The judgment from which appeal is taken here was entered by a magistrate judge. Upon special designation by the district court and with the consent of all parties, a magistrate judge is empowered to enter a final judgment in a civil case pursuant to 28 U.S.C. § 636(c)(1). If, however, the magistrate judge exercises jurisdiction without the parties' consent, then the resulting judgment is not final for purposes of § 1291, and appellate jurisdiction is lacking. *McNab v. J & J Marine, Inc.*, 240 F.3d 1326, 1328 (11th Cir. 2001); *Rembert v. Apfel*, 213 F.3d 1331, 1334 (11th Cir. 2000). There is no question that the district judge referred this action to the magistrate judge for final disposition. Nonetheless, the presence of consent for the magistrate judge's exercise of jurisdiction is not immediately apparent from the record on appeal;

4

therefore, we raised the jurisdictional issue *sua sponte*. *McNab*, 240 F.3d at 1328

("Because of its direct impact on our appellate jurisdiction, we consider *sua sponte*

whether the parties consented to the magistrate judge's jurisdiction to enter final

judgment in this case.").

Consent to magistrate jurisdiction may be either express or, in certain

narrowly circumscribed contexts, implied. *Roell v. Withrow*, 538 U.S. 580, 586,

590, 123 S.Ct. 1696, 155 L.Ed.2d 775 (2003). Where, as here, jurisdiction is

predicated on express consent, "[w]e have consistently required that a party's

consent to a magistrate judge's exercise of jurisdiction under 28 U.S.C. § 636(c)(1)

must be explicit, voluntary, clear, and unambiguous." *McNab*, 240 F.3d at 1328.

Careful review of the totality of the circumstances confirms that the *McNab*

requirements for express consent are satisfied here for four reasons. First, both

parties had consented in writing to magistrate judge jurisdiction. In that regard, the

parties offer a form entitled "Consent to Proceed before a United States Magistrate

Judge" and signed by counsel for each side. Although the document suffers from

non-trivial irregularities,[1] it is undisputed that the consent form was executed by

counsel for all parties prior to entry of judgment. Second, the form is buttressed by

the parties' representations on appeal that they had, in fact, consented. Appellant's

---

[1] In particular, the form is undated, was never filed below, and is before us only as an appendix rather than as a part of the record proper. No party has posited any explanation for the circumstances of the form's execution or its omission from the district court file.

5

counsel expressly represented during oral argument that his client had consented to magistrate judge jurisdiction pursuant to § 636(c), and appellee's counsel made similar statements. Third, the court below had obviously been apprised of the parties' consent in some fashion, as written orders from both the district judge and the magistrate judge indicated that the parties had agreed to final disposition by the magistrate judge.[2] Fourth, before entry of judgment, no party contested the district and magistrate judges' characterization that the parties had "stipulated" and "consented" to a § 636(c)(1) referral to the magistrate judge.[3]

Where a civil action is referred to a magistrate judge for final disposition pursuant to § 636(c)(1) on the basis of express consent, appellate courts should not be left guessing as to whether effective consent was, in fact, given. Moreover, the bedrock constitutional and jurisdictional considerations at stake demand that courts not be cavalier in finding a waiver of a litigant's Article III rights. *Rembert*, 213

---

[2] Less clear is the mechanism through which express consent was conveyed to the district judge and magistrate judge. The consent form was never filed, so it was not likely the conduit of that information. Moreover, even as appellee's counsel stated during oral argument that the district judge had been apprised of the parties' consent, he conceded ignorance as to the means of transmittal. Despite the ambiguity as to how that information was conveyed, the district court's statement that "[t]he parties have stipulated to final disposition by Magistrate Judge Brown, pursuant to 28 U.S.C. § 636(c)" leaves little doubt that the district judge had been so informed.

[3] Although the Supreme Court in *Roell* has recognized implied consent in certain limited circumstances, our point is different. Rather than inferring consent from a party's failure to opt out, here we simply observe that one indicator of express consent is a party's lack of objection to a district court's characterization of that party as having expressly consented. We refrain from expressing any opinion as to the meaning and proper application of *Roell*, which is beyond the scope of the jurisdictional question presented here.

6

F.3d at 1334. Thus, in the ordinary case, express consent should be commemorated via a filed, fully executed written consent form or the parties' oral expressions of consent during a hearing on the record. Neither happened here. Nonetheless, the unique circumstances of this case demonstrate that consent was explicit, unambiguous, clear and voluntary; therefore, we conclude that the parties expressly consented to magistrate judge jurisdiction. As such, the appealed-from judgment is in fact a final judgment, which we have jurisdiction to review pursuant to § 1291.[4]

> B.     *Deliberate Indifference.*

This appeal focuses on whether the magistrate judge erred in granting summary judgment to Dr. Fisher on the § 1983 claim. Bismark asserts that the court below overlooked genuine issues of material fact as to whether Dr. Fisher was deliberately indifferent to Bismark's serious medical needs. We review the entry of summary judgment *de novo*. *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1169 (11th Cir. 2006).

The law is clear that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' ... proscribed

---

[4] As should be abundantly clear from the foregoing discussion, our finding of express consent is predicated on the totality of the (unusual) circumstances of this case. It should not be read as eroding, in any respect, the narrow parameters of express consent as articulated in *McNab* and *Rembert*.

by the Eighth Amendment." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (citations omitted). But not every claim that a prisoner received inadequate medical treatment automatically vaults to the level of a constitutional deprivation. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Rather, a prison official can be deemed deliberately indifferent only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). We have construed the deliberate indifference requirement as mandating proof of each of the following: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct exceeding the level of mere negligence. *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005); *Brown*, 387 F.3d at 1351.[5] The third prong is the focal point of our analysis.

A plaintiff cannot establish deliberate indifference simply by second-guessing the conclusions reached by a prison medical official in the exercise of his

---

[5] Aside from this subjective element of deliberate indifference, a plaintiff bringing a § 1983 claim predicated on inadequate medical care must also show an "objectively serious medical need," which we have defined as "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and one that "if left unattended, poses a substantial risk of serious harm." *Brown*, 387 F.3d at 1351 (citations omitted). Because the outcome of this appeal does not turn on this element, we need not address it.

medical judgment. Indeed, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

Bismark contends that this case differs from *Adams* because, despite actual knowledge that an outside podiatrist had prescribed special shoes for Bismark, Dr. Fisher failed to adopt that plan of care, thereby intentionally interfering with treatment once prescribed. Stated differently, Bismark would have us conclude that Dr. Fisher was obliged to implement another doctor's treatment plan, even where that plan was in conflict with his own medical judgment. Nothing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that "a simple difference in medical opinion" does not constitute deliberate indifference. *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). Far from interfering with treatment once prescribed, Dr. Fisher was a physician who personally prescribed treatment for Bismark, albeit not that requested by Bismark. The Eighth Amendment did not compel Dr. Fisher to check his own medical training and judgment at the door, simply because he was

9

informed that some other doctor at some other time had prescribed orthopedic shoes for his patient.

Nor can an inference of deliberate indifference be supported by Bismark's critique of Dr. Fisher's bedside manner. While Bismark objects to Dr. Fisher's apparently brusque mannerisms, it is not a violation of the Eighth Amendment for a prison physician to consult with a prisoner concerning a medical condition in an aloof or unfriendly way.[6] Much more is required. *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) ("Medical treatment violates the eighth amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.") (citation omitted).

Dr. Fisher promptly saw Bismark when the latter complained of foot pain. During the ensuing examination, Dr. Fisher personally looked at his feet, asked him to walk across the room, and observed his feet as he did so. There is no evidence that such an examination was medically inadequate to enable Dr. Fisher to assess Bismark's condition. Moreover, Dr. Fisher provided treatment to Bismark, in the form of pain medication. He also recommended that Bismark

---

[6] Perhaps Bismark's strongest argument on this point is that, following his initial visit, Dr. Fisher refused to see him again for foot pain. However, any suggestion that this omission might amount to deliberate indifference is overcome by the lack of evidence that Bismark's condition ever materially worsened to the point where a follow-up visit with Dr. Fisher might have been medically warranted. Additionally, there is no evidence that ECI medical staff (who worked under Dr. Fisher's direction and supervision) ever refused to see or treat Bismark.

10

purchase sneakers at the canteen. Bismark does not dispute that the canteen sneakers would have adequately and effectively remediated his condition.[7] The only aspect of Dr. Fisher's diagnosis, treatment or recommendation with which Bismark takes issue is that Dr. Fisher would have him buy the sneakers himself, instead of receiving them for free. That is not the stuff of deliberate indifference, absent a showing that Dr. Fisher's determination that such shoes were not medically necessary was anything more than negligent. At most, Bismark's evidence might support an inference that Dr. Fisher was negligent in diagnosing the severity of his foot condition and his need for special shoes. "Mere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris*, 941 F.2d at 1505; *see also Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999). The dearth of evidence that Dr. Fisher's conduct exceeded the bounds of mere negligence is fatal to Bismark's deliberate indifference claim.

## III. CONCLUSION

We find that Bismark failed to raise a genuine issue of material fact as to whether Dr. Fisher was deliberately indifferent to his serious medical needs. Accordingly, the lower court correctly entered summary judgment in Dr. Fisher's

---

[7] To the contrary, the record reflects that upon receipt of a pair of ordinary high-top tennis shoes in February 2001, Bismark's foot pain abated.

11

favor, and dismissed Bismark's § 1983 claims predicated on alleged Eighth Amendment violations.

**AFFIRMED**