NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 22, 2011[*]
Decided November 30, 2011

**Before**

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-1111

| | |
|---|---|
| SERGEY V. ANDREYEV, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 09-cv-651-slc |
| | |
| BRIAN KJORLIE, et al., | Stephen L. Crocker, |
| *Defendants-Appellees.* | *Magistrate Judge.* |

**O R D E R**

Sergey Andreyev was a pretrial detainee at the Columbia County Jail in Wisconsin for 10 months in early 2006. He claims in this suit under 42 U.S.C. § 1983 that the 16 defendants, all guards at the jail, were deliberately indifferent to his periodontal disease because collectively they failed to respond favorably to 31 oral requests for a toothbrush or toothpaste during the first 3½ months of his detention. A magistrate judge, presiding by consent, granted summary judgment for the guards because the undisputed evidence

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

establishes that none of them was aware of Andreyev's condition and, moreover, their actions could not have caused harm. We affirm the judgment.

Andreyev had known about his periodontal disease since 1996 when it was diagnosed as severe. The condition affects the periodontium, the tissue surrounding the roots of the teeth and the part of the jawbone where they are anchored. J.E. SCHMIDT, 4 ATTORNEYS' DICTIONARY OF MEDICINE AND WORD FINDER, P-175–76 (2011). Andreyev's symptoms included constant pain, bleeding gums, tooth decay, and bone loss. By January 2005, almost a year before he entered the jail, Andreyev's condition had deteriorated to the point that his dentist, Dr. Robert Savage, had recommended immediate extraction of his molars and preparation for a full upper denture. Later that same year Andreyev sought approval from his insurance company for full upper *and lower* dentures, which would have required extracting all of his teeth. Andreyev chose to delay this work, and it remained undone when he entered the jail on December 31, 2005. When he was detained Andreyev never informed any jail official about his periodontal disease (the closest he got was telling the intake officer that he had "bad teeth"). And though he submitted eight written requests to see a nurse or doctor, he never once requested dental care while at the jail. Andreyev left the jail in October 2006 and underwent full-extraction surgery in November 2007.

At summary judgment the defendants submitted an affidavit from a dental consultant, Dr. Gary Conger, who opined that not brushing at all for the entire 3½ months would not have worsened Andreyev's disease or caused him to lose more teeth. By the time Andreyev entered the jail, Dr. Conger explained, his teeth could not be salvaged. Andreyev did not introduce evidence contradicting Dr. Conger's opinion. Rather, the only dispute between the parties was whether the defendants had deliberately refused Andreyev's requests for a toothbrush or toothpaste.

When he first entered the jail, Andreyev had been placed on suicide watch with a "no sharps restriction," which meant that he could not retain a toothbrush in his cell and had to be monitored while brushing. The jail's policy, however, is to provide a toothbrush and toothpaste to restricted detainees upon request. At his deposition Andreyev maintained that the defendants had denied a total of 31 such requests during his first 3½ months of pretrial confinement. (Andreyev says these oral requests were made on 31 different days, but he does not say that he never received a toothbrush or toothpaste from *someone else* on a day that one of the defendant guards turned him down. But giving Andreyev the benefit of the doubt, we assume that he went without brushing for a total of 31 days during his first 3½ months at the jail.) According to Andreyev, on the occasions when a defendant failed to accede to his request for a toothbrush or toothpaste, the guard had said something like, "Let me talk to a sergeant," or, "I'll be right back," but never followed up.

In granting summary judgment for the defendants, the magistrate judge noted that undisputed evidence established that Andreyev's periodontal disease already had progressed to the point that not brushing his teeth could not have caused additional harm. Moreover, the court reasoned, Andreyev lacked evidence that the defendants, most of whom allegedly refused him a toothbrush just once or twice, had been indifferent to his dental needs. The court explained that Andreyev had never told the defendants about his periodontal disease or requested dental care beyond a toothbrush and toothpaste. And, the court added, knowledge of a serious medical need could not be inferred from Andreyev's repeated requests for a toothbrush. Repeated requests are normal for prisoners who cannot keep one in the cell, the magistrate judge reasoned, and there was no evidence that any defendant was aware of the total number of unmet requests.[1]

On appeal Andreyev argues that the total number of unmet requests for a toothbrush evidences that he was being ignored. This contention misses a key point: Andreyev never disputed Dr. Conger's opinion that failing to brush his teeth did not exacerbate his periodontal disease or cause the need for full-extraction surgery. Causation is an element of § 1983, which creates a species of tort liability. *Roe v. Elyea,* 631 F.3d 843, 863–64 (7th Cir. 2011). Moreover, Andreyev needed to show that the guards knew of a substantial risk of harm to him and disregarded that risk. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Johnson v. Snyder,* 444 F.3d 579, 585 (7th Cir. 2006). Andreyev did not present evidence satisfying this standard. This is not a case where a single jailer denied a prisoner a toothbrush and toothpaste 15 times, in which case a reasonable trier of fact might conclude that the jailer was on notice of the prisoner's lack of toothpaste. *See Board v. Farnham,* 394 F.3d 469, 481 (7th Cir. 2005). No single defendant refused Andreyev a toothbrush more than four times, and most of the defendants turned him down no more than once or twice. Responding to a few requests for a toothbrush and toothpaste by saying, "I'll be back," or, "Let me talk to a sergeant,"and then not coming back is not evidence of the intentional acts or recklessness required to prove an Eighth Amendment violation. *See Dale v. Poston,* 548 F.3d 563, 571 (7th Cir. 2008); *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir. 1988).

                                                                                                    AFFIRMED.

---

[1]We are satisfied that all parties consented to proceed before the magistrate judge under 28 U.S.C. § 636(c). Plaintiff consented in writing, and defendants' counsel had notice of the right to refuse to consent and then consented in writing on behalf of all defendants. All parties proceeded to litigate the case without objection before the magistrate judge. *See Roell v. Withrow,* 538 U.S. 580, 590 (2003); *Stevo v. Frasor,* --- F.3d ---, --- (7th Cir. Nov. 17, 2011).