# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 2, 2021

Lyle W. Cayce
Clerk

No. 20-50255

PNC Bank, National Association,

*Plaintiff—Appellee*,

*versus*

Sylvia Ruiz,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:15-CV-770

Before Elrod, Willett, and Engelhardt, *Circuit Judges*.
Kurt D. Engelhardt, *Circuit Judge*:

Appellant Sylvia Ruiz appeals a magistrate judge's grant of Appellee PNC Bank's ("PNC") motion for summary judgment for foreclosure. Ruiz contests various evidentiary determinations and asserts that the magistrate judge erred in granting PNC's motion for summary judgment, but she also challenges the magistrate judge's jurisdiction to enter final judgment. Because we conclude that the magistrate judge lacked jurisdiction, we VACATE and REMAND for further proceedings consistent with this opinion.

No. 20-50255

## I.

Ruiz and her husband, Mark Rude, obtained a home equity loan ("the loan") from National City Mortgage Co. ("National City") on May 24, 2002. Later that same year the couple divorced, leaving the property that secured the loan to Ruiz. Rude transferred his interest in the property to Ruiz and, in 2006, she asked National City to remove him from the loan.

Subsequently, Ruiz failed to satisfy her payment obligations. On July 2, 2009, National City sent a notice to Ruiz informing her that the loan was in default. The notice stated that, to avoid acceleration of the maturity date, she could cure the default by paying a certain amount by a specified date. There is no indication that she ever did so.

PNC eventually obtained the loan by transfer on December 24, 2013, and twice proceeded through its attorneys to notify Ruiz—on April 28, 2014 and June 25, 2014—that, because of her failure to cure the default, it had elected to accelerate the loan. Ruiz remains in default for the April 1, 2010 payment and all subsequent payments in the unpaid principal amount of $167,795.91.

Seeking judicial foreclosure and declaratory judgment, PNC initiated the instant litigation against Ruiz in federal court on September 2, 2015. Thereafter, the district court issued a scheduling order requiring the parties to file a notice of consent to trial by magistrate judge. Ruiz did so, but PNC expressly *declined* to consent on the provided form. Yet, apparently because of an erroneous entry by the clerk's office, the docket text reflected that PNC *had* consented. That error lay dormant for some time because for much of the next two years, proceedings in the case were stayed as the parties engaged in unsuccessful settlement discussions. On lifting the stay in January 2019, the district court observed that Mark Rude—who was named, for uncertain reasons, in PNC's original complaint but had not made any appearance— remained a party to the case. Noting, erroneously with respect to PNC, that

No. 20-50255

Ruiz and PNC had consented to having a magistrate judge conduct all remaining proceedings in the case, the district court observed that trial before a magistrate judge was unavailable without Rude's consent. Accordingly, the court instructed PNC that if it "intend[ed] to seek default judgment as to Rude, [it] must file such a motion on or before January 23, 2019." PNC did so, and the court granted default judgment against Rude before transferring the case to a magistrate judge.

In its transfer order, to which neither party objected despite the express refusal in the record, the court noted that "the parties in this case have waived the right to proceed before a judge of the United States District Court and consented to have a United States Magistrate Judge conduct all remaining proceedings in the case, including trial and the entry of judgment." The magistrate judge then set and held a scheduling conference before entering an amended scheduling order. Again, neither party objected at any point; nor did PNC expressly consent. Ruiz then filed an amended answer and counterclaims and PNC filed a motion to substitute counsel—yet again, all without objection. Finally, both parties moved for summary judgment. On February 20, 2020, the magistrate judge granted PNC's motion for summary judgment, denied Ruiz's motion, and entered final judgment. Ruiz timely appealed.

## II.

We first consider, as we must, whether the magistrate judge had jurisdiction to conduct proceedings and enter final judgment in this matter. *See Roell v. Withrow*, 538 U.S. 580, 598 (2003) (Thomas, J., dissenting) ("[T]he necessary precondition for a court of appeals' jurisdiction over a magistrate judge's order is the parties' consent to proceed before the magistrate judge."). We conclude that the magistrate judge lacked jurisdiction and, it follows, so do we. Accordingly, our analysis must end where it begins, without reaching the merits of Ruiz's appeal.

No. 20-50255

Pursuant to the Federal Magistrate Act, a magistrate judge "may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case" if he is specially designated by the district court and all the parties' voluntary consent is obtained. 28 U.S.C. § 636(c)(1). Consent is thus "the touchstone of magistrate judge jurisdiction." *Anderson v. Woodcreek Venture Ltd.*, 351 F.3d 911, 914 (9th Cir. 2003). In some circumstances, consent need not be express. *See Roell*, 538 U.S. at 582. Implied consent can be deduced from a party's conduct during litigation and is sometimes enough to satisfy the consent requirement. *Id.*

But can consent implied by conduct alone trump a prior express and unambiguous statement of non-consent? In other words, can jurisdiction-by-estoppel overcome a written, properly-filed statement of non-consent? That is the question at issue here, and, until now, we have not had occasion to address it.

Our analysis starts with *Roell v. Withrow*, 538 U.S. 580 (2003). In *Roell*, a *pro se* plaintiff agreed to have a magistrate judge preside over the entire case, but two defendants never filed the form to indicate either their consent or non-consent. *Id.* at 582–83. Nevertheless, the case proceeded before the magistrate judge all the way to judgment in favor of the defendants. *Id.* at 583. During the whole course of those proceedings, the defendants voluntarily participated, voicing "no objection when, at several points, the [m]agistrate [j]udge made it clear that she believed they had consented." *Id.* at 584 (footnote omitted). This court, acting *sua sponte*, first raised the issue on appeal and concluded that express consent was required. *See id.* at 583. But the Supreme Court rejected that bright-line rule, holding that consent may be implied where "the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the [m]agistrate [j]udge." *Id.* at 590. The Court reasoned that this approach served the "good pragmatic" end of judicial efficiency, *id.* at

588, while simultaneously checking "the risk of gamesmanship by depriving parties of the luxury of waiting for the outcome before denying the magistrate judge's authority," *id.* at 590.

While obviously instructive, *Roell* is unlike this case. To begin, *Roell* held that consent may be implied only "in certain narrowly circumscribed contexts." *Bismark v. Fisher*, 213 F. App'x 892, 895 (11th Cir. 2007) (interpreting *Roell*). *See also Anderson*, 351 F.3d at 915 ("*Roell* held that voluntary consent could be implied in limited, exceptional circumstances."). It permitted implied consent only on the premise that the parties appeared before the magistrate judge "without expressing any reservation" about doing so. *Id.* at 586. That foundation is absent here, where, far beyond signaling reservation, PNC expressly declined to consent and never articulated any recantation of that refusal.

Moreover, we have previously held that, while it allowed for implying consent from conduct, *Roell* nevertheless "did not alter our rule that the party's consent must be clear and unambiguous." *Donaldson v. Ducote*, 373 F.3d 622, 624 n.1 (5th Cir. 2004). We cannot say that PNC's consent was clear and unambiguous because its express statement of non-consent is flatly inconsistent with its subsequent conduct. *See Stackhouse v. McKnight*, 168 F. App'x 464, 466 (2d Cir. 2006) (holding that inconsistent conduct renders the evidence "inconclusive with respect to the parties' intent" and "is not enough to demonstrate consent"). If PNC, like the defendants in *Roell*, had simply failed to register any position about referral to a magistrate judge, the outcome here may well have been different. We agree that, absent its express refusal to consent, PNC's course of conduct during all proceedings before the magistrate judge likely would imply its consent. PNC signaled consent by conspicuously declining to object at any of the numerous opportunities it had for doing so and affirmatively litigating before the magistrate judge. But its prior inconsistent statement, which it never expressly recanted, renders

that subsequent conduct inconclusive and precludes us from inferring clear and unambiguous consent. *See Donaldson*, 373 F.3d at 624 n.1.

A factual setting like this one seems to have arisen only once in our sister circuits. In *Yeldon v. Fisher*, a *pro se* plaintiff initially submitted a written form refusing consent but at no point thereafter objected when the case proceeded before a magistrate judge. 710 F.3d 452, 453 (2d Cir. 2013). The Second Circuit refused to infer consent. *Id.* Distinguishing *Roell*, the court noted that the plaintiff had affirmatively signed a consent form indicating that he did *not* consent to disposition of the case by a magistrate judge. *Id.* Furthermore, the court observed that, as a *pro se* litigant, the plaintiff "may not have appreciated that participating in proceedings before the [m]agistrate [j]udge could impugn the effectiveness of his written refusal to consent." *Id.*

PNC contends that *Yeldon* is inapposite because here "both parties were always represented by counsel and understood the significance of participating in proceedings before the magistrate judge." But the Second Circuit did not hold that the plaintiff's *pro se* status was a dispositive factor, and, regardless, we are not convinced that it ought to be. Whether a party is represented by counsel might generally be relevant to whether consent can be inferred, but it does not overcome the ambiguity created by the inconsistent implications of an express statement and subsequent contrary conduct.

To be sure, dismissing this appeal for lack of jurisdiction seemingly rewards what might be characterized as gamesmanship on the part of Ruiz. *See Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 40 (5th Cir. 2008) ("Allowing parties to object to a [magistrate judge] and insist upon a new trial only when he issues an order unfavorable to them would allow a 'gamesmanship' of the system that the Supreme Court has sought to avoid."). In other contexts, indeed, she might be estopped by her own

acquiescence from now asserting PNC's failure to consent. But not where, as here, fundamental questions of jurisdiction are involved. *See Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (noting that "parties can never consent to federal subject matter jurisdiction, and lack of such jurisdiction is a defense which cannot be waived."). Besides, we must raise the jurisdictional issue *sua sponte* if necessary. *See Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004) ("[F]ederal courts are duty-bound to examine the basis of subject matter jurisdiction sua sponte, even on appeal."). We also recognize that gamesmanship is a two-way street, and, if the shoe were on the other foot, PNC might now be claiming non-consent based on its own initial refusal. Accordingly, inferring consent under these facts would not categorically eliminate the possibility of gamesmanship under similar circumstances with a different posture in future cases.

In any event, we have little concern of widespread inefficiency and gamesmanship because circumstances like these are bound to be quite infrequent. This case is an outlier. Generally, one party's express refusal to consent is the end of the matter because, consistent with that refusal, the district court simply would not transfer the case to a magistrate judge. Hence, since *Roell* first permitted courts to infer consent from conduct almost two decades ago, implied consent cases in this and other circuits—with the apparent exception of *Yeldon*—have not involved any conflicting express statements of non-consent. Even here, given the district court's insistence that it could not transfer this case to a magistrate judge absent Rude's consent, we can safely assume that it would have done the same pursuant to PNC's refusal had it not been operating under a faulty assumption caused by the erroneous docket entry.

No. 20-50255

### III.

We are acutely mindful of the inefficiency and burden attending relitigating a case in circumstances like these, especially where the outcome on the merits may well have been the same had it emanated from a district judge instead. But ours is a court of limited jurisdiction, and we cannot resort to considerations of convenience and efficiency, albeit serious and legitimate ones, to exercise jurisdiction where we have none. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.") (internal citation omitted).

For the foregoing reasons, the judgment of the magistrate judge is hereby VACATED and the case is REMANDED to the district court. The district court is instructed, upon remand, to either: (1) dispose of the summary judgment motions in the first instance; or (2) deem the magistrate judge's order a report and recommendation and allow the parties to file objections thereto.