In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-1581

MARION HEALTHCARE, LLC,

*Plaintiff-Appellant,*

*v.*

SOUTHERN ILLINOIS HOSPITAL SERVICES, a not-for-profit corporation doing business as Southern Illinois Healthcare; and HEALTH CARE SERVICE CORPORATION, doing business as Blue Cross and Blue Shield of Illinois,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:12-CV-871-MAB — **Mark A. Beatty**, *Magistrate Judge.*

———————————

ARGUED NOVEMBER 10, 2020 — DECIDED JULY 15, 2022

———————————

Before EASTERBROOK and SCUDDER, *Circuit Judges.*[*]

———————————

[*] Circuit Judge Kanne, a member of the panel at the time of argument, died on June 16, 2022. This appeal is being decided by a quorum. 28 U.S.C. §46(d).

EASTERBROOK, *Circuit Judge*. The operator of an outpatient surgery clinic in southern Illinois accuses the area's largest hospital system and its largest health insurer of violating federal antitrust law and similar state rules by entering into contracts that designate the hospital but not the clinic as a preferred provider (also known as an in-network provider) for the insurer. This leads some patients to choose the hospital over the clinic because more of the fees will be reimbursed, copayments will be lower, or both.

District Judge Herndon dismissed much of the complaint but permitted Marion HealthCare (which we call the Clinic) to try again. 2013 U.S. Dist. LEXIS 120722 (S.D. Ill. Aug. 26, 2013). After Judge Herndon retired, the case was transferred to District Judge Yandle, who granted judgment in favor of the insurer (Health Care Service Corp., which we call the Blues because it comprises both Blue Cross and Blue Shield plans).

Judge Yandle concluded that insurers are customers and cannot be liable for the practices of sellers with market power. 2015 U.S. Dist. LEXIS 69749 (S.D. Ill. May 29, 2015). As payors, insurers should be aligned as plaintiffs (if they are to be litigants at all) rather than defendants. But Judge Yandle denied the motion of Southern Illinois Hospital Services to dismiss the amended complaint. (We call it the Hospital, singular, although it has three facilities in southern Illinois—a hospital in Carbondale, population 25,000, and two smaller facilities.) The Clinic and the Hospital agreed that a magistrate judge could handle the rest of the case and enter a final judgment. 28 U.S.C. §636(c).

Discovery followed, but, before releasing a decision on the Hospital's motion for summary judgment, Magistrate Judge

Williams retired. His successor appointed the retired judge as a special master. Reviewing the special master's report, Magistrate Judge Beatty granted summary judgment to the Hospital on the ground that the Clinic had not been injured. 2020 U.S. Dist. LEXIS 55745 (S.D. Ill. Mar. 31, 2020).

That wrapped up all parties and issues. The Clinic appealed, contesting the decisions of both District Judge Yandle and Magistrate Judge Beatty. No one noticed a potential jurisdictional problem: the Blues had not consented to a magistrate judge having final authority.

We held in *Coleman v. Wisconsin Labor & Industrial Commission*, 860 F.3d 461 (7th Cir. 2017), that use of the §636(c) procedure requires the consent of every named litigant, even one that has not been served with process. In the absence of all parties' consent, *Coleman* concludes, a district judge rather than the court of appeals reviews the magistrate judge's decision. We directed the parties to file supplemental memos addressing *Coleman*. The Clinic has asked us to dismiss the appeal (which it could have done on its own but didn't), while the Hospital and the Blues contend that we have jurisdiction. The Clinic, having lost on the merits before Magistrate Judge Beatty, now wants a decision by an Article III district judge.

Section 636(c)(1) says that a magistrate judge may enter a final decision "[u]pon the consent of the parties". *Coleman* holds that everyone named in the complaint is a party for this purpose. Any other approach, *Coleman* said, could deprive a litigant of the right to a decision by a person enjoying the tenure and salary protections of Article III. This also implies a limit to *Coleman*'s scope, for the Blues enjoyed that right and prevailed before a district judge. (The Blues say that, after winning, they were no longer a party because they had been

dismissed from the case. That's mistaken; they were and are a *prevailing* party, not a retroactive *non*-party. That's why they are appellees in this court, defending their victory.)

An opinion dissenting from the denial of hearing *en banc* in *Coleman* fretted about the handling of litigation such as this, in which one defendant wins before a district judge and the remaining litigants consent to decision by a magistrate judge. 860 F.3d at 479. The panel responded that, in such a situation, it is enough if all litigants whose rights remain to be determined consent to have a magistrate judge resolve their controversy. *Id*. at 471. This exception, which ensures that every litigant enjoys the right to an Article III judge if it chooses, fits the current situation. The Blues received a district judge's decision; the Clinic and the Hospital made their own choice to have a magistrate judge decide the remaining issues.

There is more. Consent to decision by a magistrate judge may be implied as well as express. *Roell v. Withrow*, 538 U.S. 580, 588–90 (2003), held that a party may consent by submitting arguments to a magistrate judge without protest. The Blues did exactly that. When the Clinic and Hospital sought discovery from the Blues during the extended litigation that followed District Judge Yandle's decision in the Blues' favor, they protested to the magistrate judge rather than to Judge Yandle. The Blues' post-argument memorandum in this court treats that step as representing whatever consent was necessary for the magistrate judge to play the role to which the Clinic and the Hospital had agreed. To top this off, the Blues' post-argument memorandum tells us that the Blues are content with the division of authority between the district judge and the magistrate judge. That amounts to express consent, if belated. We therefore have appellate jurisdiction.

The Blues won on the ground that they are consumers of medical care (or at least pay on behalf of consumers) and, if the Hospital has market power, should be plaintiffs rather than defendants. Judge Yandle thought that both the Sherman Act and §3 of the Clayton Act lead to this result. The Hospital won on the ground that the Clinic was not injured and, if injured, did not suffer *antitrust* injury—that is, was not made worse off by higher prices or a reduction in output, the things that make monopolies objectionable. See *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977). The antitrust laws "protect consumers from suppliers rather than suppliers from each other." *Stamatakis Industries, Inc. v. King*, 965 F.2d 469, 471 (7th Cir. 1992); accord, *Four Corners Nephrology Associates v. Mercy Medical Center of Durango*, 582 F.3d 1216, 1217 (10th Cir. 2009) (Gorsuch, J.).

Judge Yandle's and Judge Beatty's reasons, though nominally different, are two aspects of the same reason: liability in antitrust law turns not on phrases such as "exclusive contract" but on whether consumer welfare has been impaired. See, e.g., *Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979); *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. 1 (1979). Patients (the consumers of health care), their payment proxies (the Blues and other private insurers), and their governmental proxies (the Antitrust Division, the FTC, Medicare, and Medicaid) would be appropriate plaintiffs, but none of these has appeared on the Clinic's side.

The Clinic scarcely tries to show that it has been injured by reduced output or higher prices at the Hospital. And that's not the only thing odd about this antitrust suit. The complaint does not allege that there is any historical link between the Hospital's insurance-contracting practices and either prices or

output. Instead the complaint alleges that the Hospital has 77% of the patient admissions in the two counties where the Clinic has facilities.

Does that imply market power? Illinois has 102 counties, and in rural stretches of southern Illinois patients may find it necessary to drive some distance for medical care. For all this complaint shows, the area from which the Hospital draws patients is larger than two counties—and perhaps there are other equally large hospitals just outside these two counties. If so, persons seeking medical care could turn to them. The counties where the plaintiff has premises may be a poor proxy for power to affect price, and the allegations of the complaint do not match this circuit's approach to ascertaining market power in medical cases. See, e.g., *FTC v. Advocate Health Care Network*, 841 F.3d 460 (7th Cir. 2016); *Vasquez v. Indiana University Health, Inc.*, No. 21-3109 (7th Cir. July 8, 2022).

Then there is the Clinic's unusual use of "exclusive dealing." The Blues have not promised to deal only with the Hospital (in or out of two particular counties), nor has the Hospital promised to deal only with the Blues. The Hospital accepts payments from many insurers, in addition to Medicare and Medicaid, while the Blues reimburse all manner of providers. Any person insured by the Blues is free to use the Clinic's services. The *amount* the Blues reimburse (or the required co-payment) may be different, but no one has refused to deal with anyone else. The Clinic, for its part, can strike preferred-provider deals with other insurers and has done so with at least one. Magistrate Judge Beatty wrote that the Clinic does not want preferred-provider deals, fearing that such an arrangement could produce more patients than it could handle. 2020 U.S. Dist. LEXIS 55745 at *27 (the Clinic "remained out-

of-network as a business strategy, at times complaining that the rates being offered by payers were not competitive and at other times, remaining out-of-network because [it] did not believe it could handle the increased patient volume that would flow from an in-network agreement with certain payers"). So the deal between the Hospital and the Blues has not fenced the Clinic out of any part of the market in which it cares to participate.

In other words, the Blues' commitment to the Hospital not to strike a preferred-provider deal with some other provider located near the Hospital is not "exclusive dealing" in the normal antitrust sense. For the same reason it cannot be called a tie-in contract. It is instead a form of price discrimination. Yet the Clinic does not contend that the antitrust laws forbid price discrimination by either the Hospital or the Blues.

This is not the first time the Seventh Circuit has addressed one medical provider's antitrust challenge to a preferred-provider deal struck between an insurer and a different medical provider. *Methodist Health Services Corp. v. OSF HealthCare System*, 859 F.3d 408 (7th Cir. 2017), holds that neither federal nor Illinois antitrust law forbids such arrangements, whether or not a medical provider has market power. We emphasized the benefits of allowing competition for the contract: that is, an insurer or other payor can use the inducement of preferred provider status to haggle down the prices charged by a provider with market power. That works to patients' benefit, for insurance costs less; bargaining by large payors helps counteract the large hospital's ability to raise prices. *Methodist Hospital* added that a preferred-provider designation differs from vertical integration—first, because the contract can be renegotiated periodically, and second, because the insurance market

contains other payors, some of which will designate the large hospital as a preferred provider and some of which won't. We concluded that competition in the market, rather than judicial decisions, should determine how that process plays out. That is as true of the Clinic's claim as it was of Methodist Hospital's.

Instead of calling the arrangement between the Blues and the Clinic a form of exclusive dealing, the Clinic might have argued that the Blues' preferred-provider network is an essential facility to which every medical provider requires access. But it would be hard to invoke the essential-facilities doctrine, for the Clinic does not contend that the Blues have market power, so its network cannot be essential. And the Supreme Court greatly curtailed the scope of the essential-facilities doctrine in *Pacific Bell Telephone Co. v. linkLine Communications, Inc.*, 555 U.S. 438 (2009). This makes it understandable that the Clinic has not depicted the Blues' network as essential, but the exclusive-dealing cases are even less apt.

The Clinic proffered an expert witness (John Bowblis) who assumed that the Hospital has market power rather than trying to demonstrate it. For that and other reasons, including the fact that Bowblis's damages theory does not match the Clinic's liability theories and that he did not try to estimate losses to consumers, Magistrate Judge Beatty excluded the report under Fed. R. Evid. 702. He did not abuse his discretion in doing so. This left the Clinic without any means to show market power, antitrust injury (or any injury), or otherwise get beyond labels such as "exclusive dealing." And labels are not enough.

The Clinic's other theories need not be discussed, and its state-law claims fail for the same reason its federal-law claims fail.

AFFIRMED